**GORDON & ASHWORTH, PC**
By: Brian A. Gordon, Esquire
Identification No. 52342
8 Penn Center, Suite 1410         Attorney for Plaintiff
1628 JFK Boulevard                Wesley Kalman
Philadelphia, PA 19103

|  |  |  |
|---|---|---|
| **WESLEY KALMAN,** | : | UNITED STATES DISTRICT COURT |
| Plaintiff, | : | FOR THE EASTERN DISTRICT |
| v. | : | OF PENNSYLVANIA |
|  | : |  |
| **OFFICER MOORE,** in his individual capacity, **OFFICER RODRIGUEZ,** in his individual capacity, and **TEMPLE UNIVERSITY**, | : | |
|  | : | TERM, 2005 |
| Defendants. | : | NO. |

## COMPLAINT

### PARTIES

1. Plaintiff Wesley Kalman is an adult person who is a Junior at Temple University and resides at 353 Ballymore Road, Springfield, PA 19064.

2. Defendant Officer Moore is an adult person employed as an officer for Temple's Department of Campus Safety Services and is being sued in his individual capacity.

3. Defendant Officer Rodriguez is an adult person employed as an officer for Temple's Department of Campus Safety Services and is being sued in his individual capacity.

4. Defendant Temple University is a publicly funded university in the Commonwealth of Pennsylvania.

**JURISDICTION**

5. The Court has original jurisdiction over this matter under 28 U.S.C. §1331 as this matter arises under the Constitution, laws and treaties of the United States. The Court also has original jurisdiction under 28 U.S.C. §§ 1343 and 1367.

**VENUE**

6. Pursuant to 28 U.S.C. § 1391(b) venue lies in the Eastern District of Pennsylvania since a substantial part of the events giving rise to this claim occurred in this District.

**FACTS**

7. On January 30, 2004, Plaintiff Wesley Kalman was sitting on a bench near the Tuttleman Learning Center on the Temple University campus.

8. Mr. Kalman was waiting for a shuttle with a friend, Sam Parry, who was also a student at Temple University.

9. While waiting for the bus, the friend made a snowball and threw it against a building without intent to cause harm to the building. The snowball caused no damage to the building.

10. A campus police officer, who was in front of the Student Center called out to Mr. Parry. Mr. Parry then ran away.

11. The officer walked slowly toward Mr. Kalman and gave no instructions.

12. Mr. Kalman got up and walked to see where Sam was going.

13. When Mr. Kalman turned he was quickly approached by a number of police officers.

14. The officers pushed Mr. Kalman against a wall.

15. An officer then asked for identification.

16. Mr. Kalman showed the officers his ID.

17. An officer asked Mr. Kalman what he was doing and informed the officers that he was waiting for a shuttle to go back to student housing.

18. An officer asked Mr. Kalman where his friend was and he replied that he would not tell them.

19. As soon as Mr. Kalman told the officer that he would not divulge the name of his friend, Defendant Moore and/or Defendant Rodriguez told him that he was under arrest.

20. Officer Rodriguez handcuffed Mr. Kalman with his hands behind his back and squeezed the handcuffs tightly onto his wrists.

21. Officer Rodruguez appeared to be angry that Mr. Kalman did not participate in the investigation of this minor incident.

22. The handcuffs were extremely tight and painful and quickly began to cut off circulation to Mr. Kalman's hand.

23. Mr. Kalman was then placed in the Temple Campus Security van and was driven a brief distance to the Temple Campus Security Office.

24. Between the van and the Security Office, Mr. Kalman asked Officer Rodriguez and an African American officer to take the handcuffs off.

25. Mr. Kalman told the Officers that the handcuffs were too tight, that he was not going to run and that the handcuffs made him made to feel like a criminal.

26. Mr. Kalman again asked Officer Rodriguez and the African American officer to remove the handcuffs and informed them that they were too tight and were hurting his wrists.

27. Officer Rodriguez refused the request and they said it was procedure.

28.     Once in the Security Office, Mr. Kalman saw an officer sitting at a desk.  In the presence of the desk officer, Officer Rodriguez, Officer Moore, and another officer, Mr. Kalman asked them if they could please take the handcuffs off since they were on too tight and they were hurting his wrists.

29.     The office at desk smiled, shook his head and said "No."  The others did not remove the handcuffs in response to Mr. Kalman's plea.

30.     Officer Moore chained Mr. Kalman to a bench using an additional chain.  Mr. Kalman's hands were still behind his back tightly in handcuffs and the chain put his handcuffs in an even more painful and awkward position.

31.     Once chained to the bench, Mr. Kalman again pleaded to the three officers to please take off the handcuffs or at least loosen them because they were too tight and they were really hurting his wrist and cutting off his circulation.  Mr. Kalman repeated this plea to the desk officer and Officer Moore who was doing paper work at the desk.

32.     The desk officer responded, "I've heard girls that complain less."

33.     A few minutes after Mr. Kalman was seated, the young African American Officer came in and asked, "Who ran, who ran."

34.     Mr. Kalman was seated next to Sam Parry.

35.     Mr. Kalman responded by saying, "I didn't run."

36.     The African American officer then said to Mr. Kalman while looking at him, "[You're a] f---king dickhead."

37.     Mr. Kalman sat on the bench, with the handcuffs ratcheted down tightly against his wrists for three hours.

4

38. At the end of the three hours, Officer Moore told the Mr. Kalman that they were thinking of letting Mr. Kalman and Mr. Parry go if they were honest about what they did.

39. If Mr. Kalman and Mr. Parry did not admit guilt, the officer said, they would be turned over to the Philadelphia Police.

40. After three hours had elapsed, a Lieutenant approached and asked Mr. Parry what he did.  Mr. Parry mumbled something which indicated that he did throw a snowball.

41. The Lieutenant then turned Mr. Kalman and asked, "What did you do?"

42. The Lieutenant then left.  Officer Moore walked out as well.

43. Officer Moore then came back in and said "you guys almost blew it [by not admitting guilt clearly enough for the Lieutenant's liking].  But we're going release you.  You will be contacted by the student disciplinary court."

44. Officer Moore removed the handcuffs from Mr. Kalman's wrists.  The handcuffs left red deep grooves on both wrists where the handcuffs cut in.

45. Mr. Kalman showed Officer Moore the damage caused by the handcuffs.

46. Officer Moore said, "They should not have been put on that tightly."

47. Initially, the pain was burning and aching in the area of the wrists.  There was numbness in the area of Mr. Kalman's left thumb and hand.

48. Mr. Kalman has suffered permanent numbness and weakness of his left hand.

49. In any activity where the thumb is active, the injury from that handcuffs hampers movement.

50. Mr. Kalman's formal diagnosis is left radial nerve neuropathy, wrist and hand.

51. This injury is permanent.

52. As a result of the illegal arrest and use of handcuffs, and by failing to adjust or remove the handcuffs in a timely manner, Mr. Kalman was caused to incur pain and suffering, future pain and suffering, past medical bills, future medical bills, past loss of life's pleasures, future loss of life's pleasures, humiliation and embarrassment, and emotional trauma.

53. At all times, the use of force against Mr. Kalman by each of the individual defendants was under color of law.

### COUNT ONE: KALMAN V. RODRIGUEZ
### UNREASONABLE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

54. Plaintiff incorporates the above paragraphs as if fully set forth herein.

55. By placing handcuffs on Mr. Kalman in an excessively tight manner causing unnecessary pain and nerve damage, Officer Rodriguez deprived him of his Fourth Amendment right to be free from unreasonable seizure.

56. Under the totality of the circumstances, the Officers Rodriguez' actions were not objectively reasonable in light of the facts and circumstances confronting him.

57. A reasonable officer would have known that Officer Rodriguez' conduct was a clear violation of Mr. Kalman's constitutional rights.

58. At all times, Officer Rodriguez' conduct rose to the level of "willful misconduct" within the meaning of 42 Pa.C.S.A. § 8550.

Wherefore, Mr. Kalman demands judgment on his behalf against Officer Rodriguez and an award of damages under 42 U.S.C. § 1983 including compensatory damages, punitive damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

## COUNT TWO: KALMAN V. RODRIGUEZ AND MOORE
## FAILING TO REMOVE HANDCUFFS IN VIOLATION OF THE FOURTH AMENDMENT

59. Plaintiff incorporates the above paragraphs as if fully set forth herein.

60. By failing to remove or loosen the handcuffs after Mr. Kalman had informed them that they were causing him unnecessary pain and nerve damage, Officers Moore and Rodriguez deprived him of his Fourth Amendment right to be free from unreasonable seizure.

61. By using handcuffs as an instrument to inflict pain in an attempt to extract a confession, Officers Moore and Rodriguez deprived him of his Fourth Amendment right to be free from unreasonable seizure.

62. Under the totality of the circumstances, neither of the Officers' conduct was objectively reasonable in light of the facts and circumstances confronting them.

63. A reasonable officer would have known that the Officers' conduct was a clear violation of Mr. Kalman's constitutional rights.

64. At all times, the Officers' conduct rose to the level of "willful misconduct" within the meaning of 42 Pa.C.S.A. § 8550.

65. By acting jointly and in concert with each other in their refusal to loosen or remove Mr. Kalman's handcuffs, Officers Moore and Rodriguez are jointly liable for the harm caused by their unlawful use of force.

Wherefore, Mr. Kalman demands judgment on his behalf against Officers Rodriguez and Moore and an award of damages under 42 U.S.C. § 1983 including compensatory damages, punitive damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

## COUNT THREE: KALMAN v. TEMPLE UNIVERSITY
## LACK OF PROPER SCREENING, TRAINING AND SUPERVISION IN VIOLATION OF THE FOURTH AMENDMENT

66. Plaintiff incorporates the above paragraphs as if fully set forth herein.

67. Temple University's failure to adequately screen, train, supervise and discipline their officers in the proper use of handcuffs and the injuries that can be caused by their improper use amounted to deliberate indifference to the rights of persons with whom the officers come into contact and deprived Mr. Kalman of his Fourth Amendment right to be free from unreasonable seizure.

Wherefore, Mr. Kalman demands judgment on his behalf against Temple University and an award of damages under 42 U.S.C. § 1983 including compensatory damages, punitive damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

## COUNT FOUR: KALMAN V. TEMPLE UNIVERSITY
## CUSTOM AND POLICY IN VIOLATION OF THE FOURTH AMENDMENT

68. By allowing officers to use arrest, confinement and infliction of pain from handcuffs as a means to extract a confession, and having a customary policy which allows these practices to occur, Temple University permitted practices that were so permanent and well settled as to establish acquiescence and deprived Mr. Kalman of his Fourth Amendment right to be free from unreasonable seizure.

Wherefore, Mr. Kalman demands judgment on his behalf against Temple University and an award of damages under 42 U.S.C. § 1983 including compensatory damages, punitive damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

## COUNT FIVE: KALMAN V. MOORE AND RODRIGUEZ
## FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT

69. Plaintiff incorporates the above paragraphs as if fully set forth.

70. By arresting Mr. Kalman without probable cause, Officers Moore and Rodriguez deprived him of his Fourth Amendment right to be free from unreasonable seizure.

71. A reasonable officer would have known that the Officers' conduct was a clear violation of Mr. Kalman's constitutional rights.

72. At all times, the Officers' conduct rose to the level of "willful misconduct" within the meaning of 42 Pa.C.S.A. § 8550.

73. By acting jointly and in concert with each other in unlawfully arresting Mr. Kalman, Officers Moore and Rodriguez are jointly liable for violating his constitutional rights.

Wherefore, Mr. Kalman demands judgment on his behalf against each Officers Rodriguez and Moore and an award of damages under 42 U.S.C. § 1983 including compensatory damages, punitive damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

## COUNT SIX: KALMAN V. TEMPLE UNIVERSITY
## CUSTOM AND POLICY IN VIOLATION OF THE FOURTH AMENDMENT

74. By allowing officers to use handcuffs on persons without probably cause to arrest, Temple University permitted practices that were so permanent and well settled as to establish acquiescence and deprived Mr. Kalman of his Fourth Amendment right to be free from unreasonable seizure.

Wherefore, Mr. Kalman demands judgment on his behalf against Temple University and an award of damages under 42 U.S.C. § 1983 including compensatory damages, punitive damages, interest, costs and attorney's fees under 42 U.S.C. §1988.

### COUNT SEVEN: KALMAN v. MOORE AND RODRIGUEZ
### FALSE ARREST IN VIOLATION OF PENNSYLVANIA LAW

75. Plaintiff incorporates the above paragraphs as if fully set forth.

76. By arresting Mr. Kalman without probable cause, Officers Moore and Rodriguez falsely arrested him under Pennsylvania law.

77. At all times, the Officers' conduct rose to the level of "willful misconduct" within the meaning of 42 Pa.C.S.A. § 8550.

78. By acting jointly and in concert with each other in unlawfully imprisoning Mr. Kalman, Officers Moore and Rodriguez are jointly liable for violation of his rights.

Wherefore, Mr. Kalman demands judgment on his behalf against Officers Rodriguez and Moore and an award of damages including compensatory damages, punitive damages, interest, costs and attorney's fees.

### COUNT EIGHT: KALMAN v. MOORE AND RODRIGUEZ
### FALSE IMPRISONMENT IN VIOLATION OF PENNSYLVANIA LAW

79. Plaintiff incorporates the above paragraphs as if fully set forth.

80. By intentionally confining Mr. Kalman without privilege for over three hours and causing significant and permanent damage, Officers Moore and Rodriguez falsely imprisoned Mr. Kalman under Pennsylvania law.

81. At all times, the Officers' conduct rose to the level of "willful misconduct" within the meaning of 42 Pa.C.S.A. § 8550.

82. By acting jointly and in concert with each other in unlawfully imprisoning Mr. Kalman, Officers Moore and Rodriguez are jointly liable for violation of his rights.

Wherefore, Mr. Kalman demands judgment on his behalf against Officers Rodriguez and Moore and an award of damages including compensatory damages, punitive damages, interest, costs and attorney's fees.

## COUNT NINE: KALMAN v. MOORE AND RODRIGUEZ
## BATTERY IN VIOLATION OF PENNSYLVANIA LAW

83. By intentionally handcuffing Mr. Kalman and chaining him to a bench in the police station in a manner which was not privileged and which was offensive and caused physical harm to him, Officers Rodriguez and Moore committed a battery under Pennsylvania law.

84. At all times, the Officers' conduct rose to the level of "willful misconduct" within the meaning of 42 Pa.C.S.A. § 8550.

85. By acting jointly and in concert with each other in unlawfully imprisoning Mr. Kalman, Officers Moore and Rodriguez are jointly liable for violation of his rights.

Wherefore, Mr. Kalman demands judgment on his behalf against Officers Rodriguez and Moore and an award of damages including compensatory damages, punitive damages, interest, costs and attorney's fees.

## COUNT TEN: KALMAN V. RODRIGUEZ

## UNREASONABLE FORCE IN VIOLATION OF THE PENNSYLVANIA

## CONSTITUTION

86. Plaintiff incorporates the above paragraphs as if fully set forth herein.

87. By placing handcuffs on Mr. Kalman in an excessively tight manner causing unnecessary pain and nerve damage, Officer Rodriguez deprived him the right to be from unreasonable seizure guaranteed by Article I, Section 8 of the Pennsylvania Constitution.

88. Under the totality of the circumstances, the Officers Rodriguez' actions were not objectively reasonable in light of the facts and circumstances confronting him.

Wherefore, Mr. Kalman demands judgment on his behalf against Officer Rodriguez and an award of damages including compensatory damages, punitive damages, interest, costs and attorney's fees.

## COUNT ELEVEN: KALMAN V. RODRIGUEZ AND MOORE

## FAILING TO REMOVE HANDCUFFS IN VIOLATION OF THE PENNSYLVANIA

## CONSTITUTION

89. Plaintiff incorporates the above paragraphs as if fully set forth herein.

90. By failing to remove or loosen the handcuffs after Mr. Kalman had informed them that they were causing him unnecessary pain and nerve damage, Officers Moore and Rodriguez deprived him the right to be free from unreasonable seizure guaranteed by Article I, Section 8 of the Pennsylvania Constitution.

91. By using handcuffs as an instrument to inflict pain in an attempt to extract a confession, Officers Moore and Rodriguez deprived him the right to be free from unreasonable seizure guaranteed by Article I, Section 8 of the Pennsylvania Constitution.

92. Under the totality of the circumstances, neither of the Officers' conduct was objectively reasonable in light of the facts and circumstances confronting them.

93. By acting jointly and in concert with each other in their refusal to loosen or remove Mr. Kalman's handcuffs, Officers Moore and Rodriguez are jointly liable for the harm caused by their unlawful use of force.

Wherefore, Mr. Kalman demands judgment on his behalf against Officers Rodriguez and Moore and an award of damages including compensatory damages, punitive damages, interest, costs and attorney's fees.

Respectfully Submitted,

BG34
Brian A. Gordon
Gordon and Ashworth, P.C.
8 Penn Center, Suite 1410
1628 J.F.K. Boulevard
Philadelphia, PA 19103
(215) 557-6378

Michael S. Durst
Law Offices of Michael S. Durst
City Line Professional Building
7518 City Avenue
Philadelphia, PA 19151
(215) 877-8300

Dated: April 15, 2005